# UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| RANDALL E. ELLIS,<br><br>        Plaintiff,<br><br>    v.<br><br>STEVEN CAMBRA, JR., et al.,<br><br>        Defendants. | CASE NO. 1:02-CV-5646-AWI-SMS-P<br><br>FINDINGS AND RECOMMENDATIONS RECOMMENDING DEFENDANTS' MOTION TO DISMISS BE GRANTED IN PART AND DENIED IN PART<br><br>(Doc. 56) |

I.    <u>Defendants' Motion to Dismiss</u>

    A.    <u>Procedural History</u>

Plaintiff Randall E. Ellis ("plaintiff") is a state prisoner proceeding pro se and in forma pauperis in this civil rights action pursuant to 42 U.S.C. § 1983. This action is proceeding on plaintiff's third amended complaint, filed January 5, 2004, against defendants Cambra, Gomez, Terhune, Drew, Van Zant, Galaza, Meske, Keller, Andrews, and Bendon for violation of the First Amendment, Eighth Amendment, Due Process and Equal Protection Clauses of the Fourteenth Amendment, and *Ex Post Facto* Clause. On April 1, 2005, pursuant to Federal Rule of Civil Procedure 12(b), defendants Cambra, Gomez, Terhune, Drew, Galaza, Meske, Andrews, and Bendon ("defendants") filed a motion to dismiss on the grounds that plaintiff failed to exhaust the available

///
///
///
///

administrative remedies and that plaintiff's claims against defendant Gomez are barred by the statute of limitations.[1] (Doc. 56.) Plaintiff filed an opposition to the motion on May 31, 2005.[2] (Doc. 58.)

B. Exhaustion Requirement

Pursuant to the Prison Litigation Reform Act of 1995, "[n]o action shall be brought with respect to prison conditions under [42 U.S.C. § 1983], or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted." 42 U.S.C. § 1997e(a). The section 1997e(a) exhaustion requirement applies to all prisoner suits relating to prison life. Porter v. Nussle, 435 U.S. 516, 532 (2002). Prisoners must complete the prison's administrative process, regardless of the relief sought by the prisoner and regardless of the relief offered by the process, as long as the administrative process can provide some sort of relief on the complaint stated. Booth v. Churner, 532 U.S. 731, 741 (2001). Exhaustion must occur prior to filing suit. McKinney v. Carey, 311 F.3d 1198, 1199-1201 (9th Cir. 2002). Plaintiff may not exhaust while the suit is pending. McKinney, 311 F.3d at 1199-1201.

The California Department of Corrections has an administrative grievance system for prisoner complaints. Cal. Code Regs., tit. 15 § 3084, et seq. "Any inmate or parolee under the department's jurisdiction may appeal any departmental decision, action, condition, or policy which they can reasonably demonstrate as having an adverse effect upon their welfare." Id. at 3084.1(a). Four levels of appeal are involved, including the informal level, first formal level, second formal level, and third formal level, also known as the "Director's Level." Cal. Code Regs. tit 15, § 3084.5 (2005).

Section 1997e(a) does not impose a pleading requirement, but rather, is an affirmative defense under which defendants have the burden of raising and proving the absence of exhaustion. Wyatt v. Terhune, 315 F.3d 1108, 1119 (9th Cir. 2003). The failure to exhaust nonjudicial administrative remedies that are not jurisdictional is subject to an unenumerated Rule 12(b) motion, rather than a summary judgment motion. Wyatt, 315 F.3d at 1119 (citing Ritza v. Int'l

---

[1] Defendants Van Zant and Keller have not been served and have not made an appearance in this action.

[2] Plaintiff was provided with notice of the requirements for opposing an unenumerated Rule 12(b) motion on October 20, 2004. Wyatt v. Terhune, 315 F.3d 1108, 1120 n.14 (9th Cir. 2003). (Doc. 31.)

Longshoremen's & Warehousemen's Union, 837 F.2d 365, 368 (9th Cir. 1998) (per curium)).  In deciding a motion to dismiss for failure to exhaust administrative remedies, the court may look beyond the pleadings and decide disputed issues of fact.  Wyatt, 315 F.3d at 1119-20.  If the court concludes that the prisoner has failed to exhaust administrative remedies, the proper remedy is dismissal without prejudice.  Id.

### C.     Discussion

In his third amended complaint, plaintiff alleges that following claims for relief:  (1) an Eighth Amendment claim based on constant illumination in the Security Housing Unit (SHU) against defendants Galaza, Meske, Keller, and Andrews; (2) an equal protection claim based on constant illumination in the SHU against defendants Galaza, Meske, Keller, and Andrews; (3) an Eighth Amendment claim based on inadequate outdoor exercise against defendants Cambra, Galaza, Meske, Keller, and Andrews; (4) an Eighth Amendment claim based on inadequate clothing in the winter months against defendants Cambra, Galaza, Meske, and Andrews; (5) an Eighth Amendment claim based on unsanitary conditions in the SHU against defendants Galaza and Andrews; (6) an Eighth Amendment claim based on lack of adequate hygiene supplies against defendants Cambra, Galaza, Meske, and Andrews; (7) an Eighth Amendment claim based on inadequate laundry exchanges against defendants Galaza and Andrews; (8) a due process claim for deprivation of property against defendant Galaza; (9) an Eighth Amendment medical care claim against defendants Galaza and Bendon based on the failure to provide medically indicated footwear and treatment for a skin condition; (10) a retaliation claim against defendant Van Zant; (11) equal protection, retaliation, and due process claims against defendant Drew based on Drew's involvement in validating plaintiff as a gang associate; (12) due process claims based premised on policies enacted by defendants Cambra, Gomez, and Terhune governing gang validation and review procedures that deprive plaintiff of meaningful reviews and subject him to an indeterminate SHU term which affects his parole suitability; and (13) an *ex post facto* claim against defendants Cambra, Gomez, and Terhune.

### 1.     Claims Arising From Conditions in the SHU

In their motion to dismiss, defendants argue that they are entitled to dismissal of plaintiff claims arising from the alleged constant illumination, inadequate outdoor exercise, inadequate winter

1  clothing, unsanitary conditions, inadequate hygiene supplies, and inadequate laundry exchanges
2  because plaintiff did not submit any inmate appeals on those issues.[3]  (Doc. 56, Motion, 6:22-7:7.)
3  In support of their motion, defendants submit evidence that the appeals office at the institution does
4  not have any record or copies of appeals on those issues.  (Id., Exhibit A, Buckley Dec., ¶ 11.)

5  In his opposition, plaintiff concedes he did not exhaust these claims personally, but contends
6  that because this action was originally filed as a class action, exhaustion of these issues by other
7  inmates who were intended class members satisfies the exhaustion requirement. (Doc. 58, Opp., p.
8  2.)

9  On May 14, 2002, Joseph Paez III and Randall Ellis filed case number 02-CV-5561-AWI-
10 SMS-P Paez v. Cambra.[4]  By order filed May 29, 2002, the undersigned severed Ellis's claims from
11 those of Paez and ordered the instant action opened for Ellis.  Paez filed a motion seeking class
12 certification on June 3, 2002, which was denied by the undersigned on June 5, 2002.

13 The court rejects plaintiff's argument that because he and Paez intended case number 02-
14 5561 to be a class action, exhaustion of the issues in claims 1 through 7 was satisfied via exhaustion
15 of the issues by other inmates intended by he and Paez to be class members.  Plaintiff himself is
16 required to exhaust his claims prior to filing suit, either individually or as an identified participant
17 in a group appeal.  Although plaintiff alleges in a footnote that the issues were exhausted in a group
18 appeal in which he joined, plaintiff has submitted no evidence in support of this assertion.  (Doc. 58,
19 Opp., p. 2, fn. 1.)  Accordingly, plaintiff has not met his burden of demonstrating that exhaustion of
20 these claims occurred and the claims identified in this F&R as numbers 1 through 7 must be
21 dismissed.

22 ///
23 ///
24 ///
25 ///

---

[3] Identified in defendants' motion as claims 1 through 6, and identified in this Findings and Recommendations as claims 1 through 7.

[4] The court takes judicial notice of the record in Paez v. Cambra.

        2.        <u>Claim Arising From Confiscation of Property</u>

In their motion to dismiss, defendants argue that they are entitled to dismissal of plaintiff claim arising from the confiscation of his personal property.[5] (Doc. 56, Motion, 6:22-23 & 7:8-10.) In support of their motion, defendants submit evidence that the appeals office at the institution does not have any record or copy of an appeal on that issue. (<u>Id</u>., Exhibit A, Buckley Dec., ¶ 11.)

In his opposition, plaintiff argues that defendants are not entitled to dismissal of this claim because prison officials prevented plaintiff from utilizing the grievance procedure. (Doc. 58, Opp., p. 4.) Plaintiff contends that on February 14, 2002, he submitted an inmate appeal on the issue by dropping the appeal in the marked appeals box. (<u>Id</u>., p. 3.) Plaintiff contends he received no response and placed a second appeal in the unit box marked "informal level" on February 19, 2002. (<u>Id</u>.) On February 22, 2002, plaintiff wrote a letter to defendant Galaza concerning the confiscation of his property and the lack of response to his inmate appeals. (<u>Id</u>.) Plaintiff contends that on March 6, 2002, defendant Andrews assigned Sergeant Jackson to interview plaintiff concerning his property loss, and that prison officials would not respond to his appeals and chose to address his complaints in the manner they did. (<u>Id</u>., p. 3-4) Plaintiff contends that on March 20, 2002, he wrote defendant Cambra, who was at that time the Director of CDC, and complained that prison officials were not responding to his inmate appeals. (<u>Id</u>., p. 4.) Plaintiff received a response from a representative on April 12, 2002, informing him that his concerns would be passed on to defendant Galaza. (<u>Id</u>.) Plaintiff contends that on April 22, 2002, defendant Galaza responded to his letter, stating among other things that defendant Andrews had been appointed to respond to plaintiff's concerns. (<u>Id</u>., p. 3.) Plaintiff argues that he went beyond what was required of him in an attempt to secure a response to his appeals on the property issue and that the lack of response to his appeals amounted to a prevention by prison officials of his utilization of the inmate appeals process. (<u>Id</u>., p. 3-4.)

///
///
///

---

[5] Identified in defendants' motion as claim 7, and identified in this Findings and Recommendations as claim 8.

1    In support of his opposition, plaintiff submits a letter to him from defendant Galaza dated
2    April 21, 2001[6], concerning plaintiff's correspondence dated February 22, 2002. (Id., Exhibit A, p.
3    1-2.) In the letter, plaintiff is informed that defendant Galaza made a determination that defendant
4    Andrews should respond as appropriate and that defendant Andrews assigned Sergeant Jackson to
5    interview plaintiff. (Id.) Defendant Galaza stated that Sergeant Jackson interviewed plaintiff on
6    March 6, 2002, and conducted a complete, thorough inquiry into plaintiff's concerns. (Id.)
7    Defendant Galaza stated that "[a]ll appeals are processed expeditiously and in accordance with
8    institutional procedures," and recommended that plaintiff be patient with the appeal process. (Id.)

9    Plaintiff also submits a copy of the letter dated April 12, 2002, sent to him by J. Hamlet, a
10   regional administrator, in response to plaintiff's letter to defendant Cambra dated March 20, 2002.
11   (Id., Exhibit A, p. 3.) Hamlet informed plaintiff that his staff contacted the Appeals Office at
12   Corcoran and were advised that they did not have an appeal from plaintiff regarding the property
13   issue. (Id.) Plaintiff was notified that if he did not receive an informal response to his appeal, he
14   could submit his appeal to the Appeals Office with notice that he had attempted informal resolution
15   but received no response. (Id.) Plaintiff was notified that if he was dissatisfied with the appeal
16   response, he could proceed to the next level. (Id.)

17   The court recognizes that the inmate appeals system is imperfect and is at times a system
18   within which it is difficult to navigate. See Ngo v. Woodford, 403 F.3d 620, 631 (9th Cir. 2005).
19   The court accepts as true plaintiff's contention that appeals disappear on occasion, and that the two
20   appeals he submitted on February 19, 2002, and February 22, 2002, disappeared. Nevertheless, "[a]ll
21   'available' remedies must now be exhausted; those remedies need not meet federal standards, nor
22   must they be 'plain, speedy, and effective.'" Porter, 534 U.S. at 524 (citing to Booth, 532 U.S. at
23   739 n.5). Thus, compliance with the exhaustion requirement cannot be excused because the system
24   is flawed or difficult to utilize.

25   However, there is authority for the proposition that exhaustion occurs when prison officials
26   fail to respond to a grievance within the policy time limits. Boyd v. Corrections Corp. of America,

---

[6] It appears that the year "2001" was a typographical error, as the incident occurred in 2002 and the other dates set forth in the letter reference 2002.

6

380 F.3d 989, 996 (6th Cir. 2004) (administrative remedies are exhausted when prison officials fail to timely respond to properly filed grievance); Jernigan v. Stuchell, 304 F.3d 1030, 1032 (10th Cir. 2002) (the failure to respond to a grievance within the policy time limits renders remedy unavailable); Lewis v. Washington, 300 F.3d 829, 833 (7th Cir. 2002) (when prison officials fail to respond, the remedy becomes unavailable, and exhaustion occurs); Foulk v. Charrier, 262 F.3d 687, 698 (8th Cir. 2001) (district court did not err when it declined to dismiss claim for failure to exhaust where prison failed to respond to grievance); Powe v. Ennis, 177 F.3d 393, 394 (5th Cir. 1999) (when a valid grievance has been filed and the state's time for responding has expired, the remedies are deemed exhausted); Underwood v. Wilson, 151 F.3d 292, 295 (5th Cir. 1998) (when time limit for prison's response has expired, the remedies are exhausted); see also Mitchell v. Horn, 318 F.3d 523, 529 (3d Cir. 2003) (recognizing that a remedy prison officials prevent a prisoner from utilizing is not an available remedy); Brown v. Croak, 312 F.3d 109, 113 (3d Cir. 2002) (formal grievance procedure not available where prison officials told prisoner to wait for termination of investigation before filing formal grievance and then never informed prisoner of termination of investigation); Miller v. Norris, 247 F.3d 736, 740 (8th Cir. 2001) (a remedy prison officials prevent a prisoner from utilizing is not an available remedy). Prison officials should not be permitted "to exploit the exhaustion requirement through indefinite delay in responding to the grievances.'" Lewis v. Washington, 300 F.3d 829, 833 (7th Cir. 2002) (citing Goodman v. Carter, No. 2000 C 948, 2001 WL 755137, at *3 (N.D.Ill. July 2, 2001)). The issue becomes one of determining at what point prison officials have sufficiently thwarted the process so as to render it unavailable.

In this instance, the court is not persuaded that the system was effectively rendered unavailable and exhaustion therefore occurred. As previously stated, the court accepts as true that plaintiff submitted two appeals for informal resolution and neither received a response. However, plaintiff was specifically notified by a prison official who looked into the matter that there was no record of the appeals and that plaintiff could submit an appeal to the first formal level of review with an explanation as to why there was no informal level response. Thus, prior to the time plaintiff filed this suit, an avenue of administrative relief remained available to him - submitting an appeal to the first formal level of review. See Ngo, 403 F.3d at 631 (exhaustion occurs when no further avenues

of relief are available). Frustration with the process is understandable. However, if there is a process available, it must be utilized, regardless of how tiresome or trying. See Porter, 534 U.S. at 524 (citing to Booth, 532 U.S. at 739 n.5).

Additionally, the court rejects plaintiff's argument that because he received responses to his letters, prison officials made a choice to respond to his grievance in that forum, thereby satisfying the exhaustion requirement. Plaintiff is required to utilize the inmate appeals process in order to exhaust. See Ngo, 403 F.3d at 624 (detailing inmate appeals process). That plaintiff may have successfully obtained a response from prison officials via letters does not relieve plaintiff of his obligation to use the inmate appeals process.

Accordingly, the court finds that plaintiff did not exhaust his property confiscation claim and recommends that claim number 8 be dismissed from this action.

### 3. Medical Care Claims

In his complaint, plaintiff alleges that he has a slight deformity of the feet which requires him to wear tight fitting, high top tennis shoes with rubber arch supports. (Doc. 22, 3rd Amend. Comp., p. 12-13.) Plaintiff alleges that defendants Galaza and Bendon enacted a policy that caused plaintiff to be deprived of this footwear upon his arrival at Corcoran in August of 2000. (Id.) Plaintiff alleges that as a result of not having appropriate footwear, he has sustained further harm. (Id.) In addition, plaintiff alleges that he was being treated for a chronic skin condition by Dr. Johns, which was discontinued pursuant to a memorandum authored by defendants Galaza and Bendon. (Id., p. 14.)

In their motion, defendants argue that they are entitled to dismissal of plaintiff's claim for deprivation of medically necessary footwear because exhaustion occurred after this suit was filed.[7] (Doc. 56, Motion, 10:24-11:12.) Defendants submit evidence that plaintiff filed two separate inmate appeals concerning his orthopedic shoes. (Id., Buckley Dec., ¶ 12.) Appeal number 03-3746 grieves the failure of officials to provide plaintiff with high top orthopedic shoes, as recommended by a podiatrist on April 18, 2003. (Id., Buckley Dec., Attach 2, p. 1-4.) The appeal was denied at the second level of review on December 17, 2003. (Id.) Appeal number 03-1715 was denied at the

---

[7] Identified in defendants' motion as claim 8, and identified in this Findings and Recommendations as claim 9.

1  Director's level of review on October 1, 2003.  (Id., Buckley Dec., Attach 2, p. 5.)  Although
2  defendants did not provide a copy of the appeal itself, the decision summarized the appeal issue as
3  a grievance relating to the inappropriate confiscation of plaintiff's orthopedic shoes. (Id.)

4  In his opposition, plaintiff contends that he submitted appeals long before the ones prison
5  officials chose to respond to and that they did not respond to his earlier appeals until after he filed
6  suit.  (Doc. 58, Opp., p. 5-6.)  Plaintiff contends that prison officials rendered the claim exhausted
7  by failing to respond.  (Id.)

8  Plaintiff further contends that on August 9, 2001, he submitted an appropriate notice pursuant
9  to California Penal Code section 2656 and that under state law, this notice is sufficient to satisfy the
10  exhaustion requirement.  (Id.)  Plaintiff submits a copy of a notice to Warden Fred A. Brown, dated
11  August 9, 2001, in which plaintiff demands the return of his orthopedic shoes and cites to section
12  2656 of the California Penal Code.  (Id., Exhibit C, p. 1.)  Plaintiff also submits a copy of Warden
13  Brown's response, dated August 31, 2001, in which Brown states that casts of plaintiff's feet were
14  made and that as soon as the new orthopedic shoes were made available to the institution, plaintiff
15  would be ducated to receive them.  (Id., Exhibit C, p. 2.)

16  Plaintiff has submitted no evidence that overcomes defendants' showing that plaintiff's
17  inmate appeal concerning the confiscation of his shoes was exhausted on October 1, 2003, after
18  plaintiff filed suit.  The appeal grieving the failure to provide orthopedic shoes to plaintiff does not
19  appear to have been exhausted, given that it was denied at the second level of review on December
20  17, 2003, and there is no indication on the appeal that it was submitted to the Director's level of
21  review.  Regardless, the appeal was initiated after this suit was filed.

22  With respect to state law procedures, section 2656 of the California Penal Code governs the
23  confiscation of orthopedic or prosthetic appliances used by prisoners, and provides an avenue by
24  which a prisoner may petition the superior court for the return of the confiscated appliance.
25  Completion of the form petitioning the court for the return of an appliance in accordance with
26  section 2656 is not a substitute for utilizing the inmate appeals process.  In order to satisfy the
27  exhaustion requirement set forth in 42 U.S.C. § 1997e(a), plaintiff must have utilized the inmate
28  appeals process by filing an appeal on a CDC 602 form grieving the facts at issue in his claim(s).

See Ngo, 403 F.3d at 624 (detailing inmate appeals process). That plaintiff used a state law code section to demand the return of his orthopedic shoes and received a response from Warden Brown does not constitute exhaustion in compliance with section 1997e(a). Accordingly, the court finds that plaintiff did not, prior to filing this suit, exhaust his medical claim against defendants Galaza and Bendon concerning his orthopedic shoes, and the court recommends that this claim be dismissed. McKinney, 311 F.3d at 1199-1201. Because defendants did not move for dismissal of plaintiff's other medical claim, it remains pending.

### 4. Validation, Placement, and Retention in the SHU

Plaintiff's remaining claims are based on his validation as a Black Guerilla Family associate, and his placement and retention in the SHU. (Doc. 22, 3rd Amend. Comp., p. 16-27.) Plaintiff alleges that his validation by defendant Drew did not meet the "some evidence" standard, Superintendent v. Hill, 472 U.S. 445, 455 (1985), and that defendant Drew had a discriminatory motive and retaliated against plaintiff based on plaintiff's exercise of his right to read and review approved material. (Id.) Plaintiff also alleges that he was not provided with periodic reviews that were meaningful, that sections 3341.5(c)(4)[8] and 3378(e) of Title 15 of the California Code of Regulations violate the *Ex Post Facto* Clause, and that as a result of his indeterminate SHU term, he will not be considered for parole. (Id.)

In their motion to dismiss, defendants argue that they are entitled to dismissal of plaintiff's claim arising from the validation, placement, and retention in the SHU.[9] (Doc. 56, Motion, 6:22-23 & 7:12-16.) In support of their motion, defendants submit evidence that the appeals office at the institution does not have any record or copy of any appeals on these issues. (Id., Exhibit A, Buckley Dec., ¶ 11.)

///

---

[8] In his complaint on page 24 at paragraph 85, plaintiff alleges that section 3341.5(c)(5) violates the Ex Post Facto Clause. However, plaintiff then cites language from 3341.5(c)(4). In light of the fact that plaintiff's claim is based in part on the debriefing requirement, it appears that plaintiff's reference to 3341.5(c)(5) is incorrect and 3341.5(c)(4), which provides that a validated gang member or associate in the SHU shall be considered for release from SHU after debriefing, is the section at issue.

[9] Identified in defendants' motion as claims 10 through 19, and identified in this Findings and Recommendations as claims 11 through 13.

In his opposition, plaintiff contends that these claims have been exhausted. (Doc. 58, Opp., p. 6-7.) With respect to his claims against defendant Drew, plaintiff submits a Director's Level decision issued on March 21, 2001, in which plaintiff challenged his validation as a Black Guerilla Family associate. (Id., Exhibit H.) This appeal appears to exhaust plaintiff's due process claim against defendant Drew. However, it does not support a finding that plaintiff exhausted his equal protection and retaliation claims against defendant Drew.

Satisfaction of the exhaustion requirement does not require that inmates draft grievances with the precision of an attorney, laying out every fact, identifying every defendant by name, and identifying which constitutional rights were violated by which actions or omissions. However, satisfaction of the exhaustion requirement requires that inmates, in their grievances, place prison personnel on fair notice as to the events that subsequently give rise to suit. In this instance, in order to have exhausted these claims, plaintiff needed to have placed prison officials on notice that he believed that in validating him as a gang associate, defendant Drew had discriminated against him based on his race and retaliated against him for exercising his right to read certain protected material. Plaintiff did not provide a copy of the appeal itself and based on the language set forth in the appeal decision, the court concludes that the appeal did not exhaust the equal protection and retaliation claims against defendant Drew. (Id.)

Plaintiff submits a copy of a Director's level decision dated August 12, 2003, in support of his contention that his claim concerning the meaningless periodic reviews was exhausted. (Id., Exhibit F.) Plaintiff did not provide a copy of the appeal itself, but based on the wording set forth in the decision, it appears the appeal related to the issue of a hardship transfer to the California Correctional Institution rather than to a challenge to periodic reviews as meaningless, although the decision does reflect that plaintiff contends the hearing he had was useless. (Id.) Regardless, to the extent that the appeal decision may have exhausted plaintiff's claim concerning meaningless reviews, the decision was issued after this suit was filed and dismissal is therefore mandated. McKinney, 311 F.3d at 1199-1201.

With respect to his *Ex Post Facto* Clause claim, plaintiff alleges that the claim was exhausted via a group appeal that plaintiff participated in with former co-plaintiff Paez. (Opp., p. 6 ¶ e.)

11

Plaintiff has submitted no evidence that he was an identified participated in a group appeal grieving his *Ex Post Facto* Clause claims. Plaintiff's bare, unsupported assertion that he participated in a group appeal is insufficient to demonstrate that he exhausted this claim. Accordingly, it must be dismissed.

Finally, plaintiff alleges that his claim that he is being denied consideration for parole based on his indeterminate SHU term was exhausted via his appeal of the Board of Prison Terms' November 1999 decision. (Id., p. 6 ¶ f.) Plaintiff submits a copy of his appeal and the resolution issued on June 13, 2000. (Id., Exhibit G.) In the appeal, plaintiff contends that he was deprived of a fair, full, meaningful hearing by the BPT's reliance on a psychiatric report and on another report written by a staff member who was involved in confining plaintiff in order to force him to debrief. (Id.)

The appeal submitted by plaintiff grieves the result of a specific BPT hearing and challenges two reports relied on by the BPT to deny plaintiff parole. (Id.) The appeal does not grieve plaintiff's claim in this action that as a result of his indeterminate SHU term, he is unable to receive consideration for parole. Accordingly, plaintiff has not demonstrated that he exhausted his parole claim and it must be dismissed.

D.   Conclusion

In summary, the court finds that the majority of plaintiff's claims have either not been exhausted or were exhausted after this suit was filed, and the court shall recommend that they be dismissed from this action, without prejudice. Defendants did not move for dismissal of plaintiff's medical claim based on his skin condition, and that court found that plaintiff exhausted his due process claim against defendant Drew. Accordingly, those claims remain pending, along with plaintiff's retaliation claim against unserved defendant Van Zant.

Because no unexhausted claims remain against defendant Gomez, the court does not reach defendants' argument made pursuant to Rule 12(b)(6) that plaintiff's claims against defendant Gomez are barred by the statute of limitations.

///

///

Accordingly, based on the foregoing, the court HEREBY RECOMMENDS that defendants' unenumerated Rule 12(b) motion, filed April 1, 2005, be GRANTED IN PART and DENIED IN PART as follows:

1. Plaintiff's Eighth Amendment claim based on constant illumination in the Security Housing Unit (SHU) against defendants Galaza, Meske, Keller, and Andrews; equal protection claim based on constant illumination in the SHU against defendants Galaza, Meske, Keller, and Andrews; Eighth Amendment claim based on inadequate outdoor exercise against defendants Cambra, Galaza, Meske, Keller, and Andrews; Eighth Amendment claim based on inadequate clothing in the winter months against defendants Cambra, Galaza, Meske, and Andrews; Eighth Amendment claim based on unsanitary conditions in the SHU against defendants Galaza and Andrews; Eighth Amendment claim based on lack of adequate hygiene supplies against defendants Cambra, Galaza, Meske, and Andrews; Eighth Amendment claim based on inadequate laundry exchanges against defendants Galaza and Andrews; due process claim for deprivation of property against defendant Galaza; Eighth Amendment medical care claim against defendants Galaza and Bendon based on the failure to provide medically indicated footwear; equal protection and retaliation claims against defendant Drew based on Drew's involvement in validating plaintiff as a gang associate; due process claims based premised on policies enacted by defendants Cambra, Gomez, and Terhune governing gang validation and review procedures that deprive plaintiff of meaningful reviews and subject him to an indeterminate SHU term which affects his parole suitability; and *ex post facto* claim against defendants Cambra, Gomez, and Terhune be DISMISSED from this action, without prejudice, for failure to exhaust the available administrative remedies;

2. Defendants Cambra, Gomez, Terhune, Meske, Keller, and Andrews be dismissed from this action, as no claims remain pending against them; and

3. This action proceed only on plaintiff's Eighth Amendment medical care claim against defendants Galaza and Bendon based on the discontinuation of plaintiff's skin

treatment plan, retaliation claim against unserved defendant Van Zant, and due process claim against defendant Drew based on plaintiff's validation as a gang associate.

These Findings and Recommendations will be submitted to the United States District Judge assigned to the case, pursuant to the provisions of Title 28 U.S.C. § 636(b)(l). Within **thirty (30) days** after being served with these Findings and Recommendations, the parties may file written objections with the court. The document should be captioned "Objections to Magistrate Judge's Findings and Recommendations." The parties are advised that failure to file objections within the specified time may waive the right to appeal the District Court's order. Martinez v. Ylst, 951 F.2d 1153 (9th Cir. 1991).

IT IS SO ORDERED.

**Dated:    August 30, 2005**              /s/ Sandra M. Snyder
icido3                                   UNITED STATES MAGISTRATE JUDGE