# UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| RANDALL E. ELLIS, | CASE NO. 1:02-cv-05646-AWI-SMS PC |
| Plaintiff, | ORDER GRANTING PLAINTIFF'S MOTION FOR IN CAMERA REVIEW OF CONFIDENTIAL MEMORANDUM |
| v. | |
| STEVEN CAMBRA, JR., et al., | (Doc. 86) |
| Defendants. | ORDER GRANTING IN PART AND DENYING IN PART PLAINTIFF'S MOTIONS TO COMPEL, AND REQUIRING DEFENDANT TO SERVE RESPONSES WITHIN THIRTY DAYS |
| | (Docs. 84, 85, and 88) |
| | ORDER PLAINTIFF'S MOTION FOR ORDER PERMITTING HIM TO OBTAIN DECLARATIONS FROM INMATE WITNESSES IS DENIED |
| | (Doc. 83) |

**Order on Plaintiff's Discovery Motions**

**I.    Background**

Plaintiff Randall E. Ellis ("Plaintiff") is a state prisoner proceeding pro se and in forma pauperis in this civil rights action pursuant to 42 U.S.C. § 1983.  This action is proceeding on

///

///

///

1

Plaintiff's third amended complaint, filed January 5, 2004, against Defendant Drew ("Defendant") on Plaintiff's due process, equal protection, and retaliation claims.[1] (Doc. 72.)

Plaintiff was validated as an associate of the Black Guerrilla Family ("BGF") on May 16, 1990, and assessed a term in the Security Housing Unit ("SHU"). Defendant Drew conducted an inactive review of Plaintiff on January 19, 2000, and determined that Plaintiff did not meet the requirements for inactive gang status. Plaintiff remained confined in the SHU as a result.

In reaching this determination, Defendant relied upon two items he confiscated during a search of Plaintiff's cell on January 19, 2000. The first item was a manila envelope containing two newspapers. The name and CDC number of a validated member of the BGF was on the envelope, and the newspapers belonged to a validated associate of the BGF. The second item was an unmarked manila envelope containing a document containing statements handwritten by Plaintiff. Three validated members/associates of the BGF were listed at the end of the document.

Plaintiff alleges that Defendant violated his right to due process because Defendant's decision was not supported by "some evidence." Plaintiff further alleges that Defendant intentionally discriminated against him based on his race, and retaliated against him for exercising his protected right to read and write.

Pending before the Court are Plaintiff's motions to compel and for assistance in communicating with his inmate witnesses, and the parties' cross-motions for summary judgment. Given that Plaintiff's pending discovery motions were timely filed prior to the filing of the motions for summary judgment and Plaintiff is a prisoner proceeding pro se, the Court is mindful of the Ninth Circuit's position that it may grant summary judgment for defendants "only where such discovery would be 'fruitless' with respect to the proof of a viable claim." Jones v. Blanas, 393 F.3d 918, 930 (9th Cir. 2004) (quoting Klingele v. Eikenberry, 849 F.2d 409, 412 (9th Cir. 1988)).

**II.     Plaintiff's Legal Claims**

Plaintiff's entitlement to the production of the discovery he seeks hinges on the nature of his legal claims. Set forth below are the legal standards which govern Plaintiff's claims. The Court

---

[1] Following the resolution of two motions to dismiss, all other claims and defendants have been dismissed. (Docs. 72, 80.)

2

deems it necessary to set forth the standards because Plaintiff relies heavily on the content, or lack thereof, of the California Department of Corrections and Rehabilitation regulations. Plaintiff also focuses heavily on the presentation of other explanations for the material and for the association with the other inmates.

Plaintiff brought his claims in federal court for violation of his rights under the United States Constitution. Therefore, the issue is whether Defendant violated Plaintiff's rights under federal law rather than whether Defendant's conduct was in compliance with governing regulations and/or violated rights accorded to Plaintiff under state law via prison regulations.

## A.  Due Process Claim

The Due Process Clause protects against the deprivation of liberty without due process of law. Wolff v. McDonnell, 418 U.S. 539, 556, 94 S.Ct. 2963 (1974). In order to invoke the protection of the Due Process Clause, a plaintiff must first establish the existence of a liberty interest for which the protection is sought. Liberty interests may arise from the Due Process Clause itself or from state law. Wilkinson v. Austin, 545 U.S. 209, 221, 125 S.Ct. 2384 (2005). The Due Process Clause itself does not confer on Plaintiff a liberty interest in avoiding "more adverse conditions of confinement." Id.; Hewitt v. Helms, 459 U.S. 460, 466-68, 103 S.Ct. 864 (1983). "[T]he touchstone of the inquiry into the existence of a protected, state-created liberty interest in avoiding restrictive conditions of confinement is not the language of regulations regarding those conditions but the nature of those conditions themselves 'in relation to the ordinary incidents of prison life.'" Wilkinson at 223 (quoting Sandin v. Conner, 515 U.S. 472, 484, 115 S.Ct. 2293 (1995)). State-created liberty interests are limited to freedom from restraint which "imposes atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life." Sandin at 484.

The assignment of validated gang members and associates to the SHU is an administrative measure rather than a disciplinary measure, and is "essentially a matter of administrative discretion." Bruce v. Ylst, 351 F.3d 1283, 1287 (9th Cir. 2003) (quoting Munoz v. Rowland, 104 F.3d 1096, 1098 (9th Cir. 1997)). As such, prisoners are entitled to the minimal procedural protections set forth in Toussaint, namely adequate notice, an opportunity to be heard, and periodic review. Bruce, 351 F.3d at 1287 (citing to Toussaint v. McCarthy, 801 F.2d 1080, 1100-01 (9th Cir. 1986)). During

the validation process, Plaintiff was entitled to "an informal nonadversary hearing within a reasonable time" after segregation, notice of the charges or reasons for segregation, and an opportunity to present his views. Toussaint, 801 F.2d at 1100. In addition to these minimal protections, there must be "some evidence" supporting the decision. Id. (citing Superintendent v. Hill, 472 U.S. 445, 454, 105 S.Ct. 2768 (1985)).

In determining whether there exists some evidence, the Court is not to "examine the entire record, independently assess witness credibility, or reweigh the evidence; rather 'the relevant question is whether there is *any* evidence in the record that could support the conclusion.'" Bruce at 1287 (quoting Superintendent, 472 U.S. at 455-56) (emphasis added). Although discussed in the context of a disciplinary hearing, the Ninth Circuit has stated that under the Hill standard, the evidence should have some indicia of reliability. Cato v. Rushen, 824 F.2d 703, 705 (9th Cir. 1987). Under federal law, one piece of evidence may be sufficient to meet the "some evidence" standard. Bruce at 1288.

Satisfaction of the "some evidence" standard does not require that the evidence relied upon "preclude[] any conclusion but the one reached upon by the decision maker." Superintendent, 472 U.S. at 457. Direct evidence is not required and even evidence best described as meager may be sufficient. Id. The question is whether or not the record is so devoid of evidence that the finding was without support or otherwise arbitrary. Id.

Finally, segregation "may not be used as a pretext for indefinite confinement," Toussaint, 801 F.2d at 1101 (quoting Hewitt, 459 U.S. at 477 n.9), and due process therefore required that following Plaintiff's validation and confinement to the SHU, Plaintiff be given periodic reviews of his confinement which amounted to more than "meaningless gestures." Toussaint, 801 at 1101-02. This post-deprivation "review will not necessarily require that prison officials permit the submission of any additional evidence or statements," and "[t]he decision whether a prisoner remains a security risk will be based on facts relating to a particular prisoner - which will have been ascertained when determining to confine the inmate . . . - and on the officials' general knowledge of prison conditions and tensions, which are singularly unsuited for 'proof' in any highly structured manner." Hewitt, 459 U.S. at 477 n.9.

1    Plaintiff's validation as a BGF member in 1990 is not at issue in this action. Rather, the issue
2    is whether Defendant's post-deprivation review of Plaintiff's status comported with due process.
3    Plaintiff was due fairly minimal procedural process concerning his initial validation in 1990.
4    Plaintiff was due even less process during the subsequent review of his confinement by Defendant.
5    The post-deprivation review process did not have the effect of bestowing upon Plaintiff all of the
6    protections he was due at the time he was originally validated.

**B.     Equal Protection Claim**

"The Equal Protection Clause . . . is essentially a direction that all persons similarly situated should be treated alike." City of Cleburne v. Cleburne Living Ctr., Inc., 473 U.S. 432 (1985) (citing Plyler v. Doe, 457 U.S. 202, 216 (1982)). "'To state a claim under 42 U.S.C. § 1983 for a violation of the Equal Protection Clause of the Fourteenth Amendment a plaintiff must show that the defendants acted with an intent or purpose to discriminate against the plaintiff based upon membership in a protected class.'" Lee v. City of Los Angeles, 250 F.3d 668, 686 (9th Cir. 2001) (quoting Barren v. Harrington, 152 F.3d 1193, 1194 (9th Cir. 1998)). "Intentional discrimination means that a defendant acted at least in part *because of* a plaintiff's protected status." Serrano v. Francis, 345 F.3d 1071, 1082 (9th Cir. 2003) (quoting Maynard v. City of San Jose, 37 F.3d 1396, 1404 (9th Cir. 1994)) (emphasis in original). "To avoid summary judgment, [Plaintiff] 'must produce evidence sufficient to permit a reasonable trier of fact to find by a preponderance of the evidence that [Defendant's] decision was racially motivated.'" Serrano v. Francis, 345 F.3d 1071, 1082 (9th Cir. 2003) (quoting Bingham v. City of Manhattan Beach, 329 F.3d 723, 732 (9th Cir. 2003) (citations and alterations omitted)).

**C.     Retaliation Claim**

"Within the prison context, a viable claim of First Amendment retaliation entails five basic elements: (1) An assertion that a state actor took some adverse action against an inmate (2) because of (3) that prisoner's protected conduct, and that such action (4) chilled the inmate's exercise of his First Amendment rights, and (5) the action did not reasonably advance a legitimate correctional goal." Rhodes v. Robinson, 408 F.3d 559, 567-68 (9th Cir. 2005). The Court must "'afford appropriate deference and flexibility' to prison officials in the evaluation of proffered legitimate

penological reasons for conduct alleged to be retaliatory." Pratt, 65 F.3d at 807 (quoting Sandin v. Conner, 515 U.S. 472, 482 (1995)).  The burden is on Plaintiff to demonstrate "that there were no legitimate correctional purposes motivating the actions he complains of." Id. at 808.

**III.    Plaintiff's Motions to Compel**

"Parties may obtain discovery regarding any matter, not privileged, that is relevant to the claim or defense of any party . . . .  Relevant information need not be admissible at the trial if the discovery appears reasonably calculated to lead to the discovery of admissible evidence." Fed. R. Civ. P. 26(b)(1).  Defendant is required to "furnish such information as is available" to him in responding to Plaintiff's interrogatories, and documents which are in his "possession, custody or control" in responding to Plaintiff's request for the production of documents. Fed. R. Civ. P. 33(a), 34(a).  If Defendant objects to one of Plaintiff's discovery requests, it is Plaintiff's burden on his motion to compel to demonstrate why the objection is not justified.  Plaintiff must inform the court which discovery requests are the subject of his motion to compel, and, for each disputed response, inform the Court why the information sought is relevant and why Defendant's objections are not justified.

        **A.    Motion to Compel Further Responses to Interrogatories**

**ROG 28:** "What about a newspaper that belong to another prisoner in the possession of Plaintiff is gang activity?"

Plaintiff contends this request is relevant to his claims that his rights were violated when Defendant took legitimate cultural material and classified it as gang material simply because it belonged to other prisoners Plaintiff was housed with.

**Ruling:** Granted: Defendant Drew is directed to respond referencing CA Code of Regulations, Title 15, § 3378; further, if the criteria referred to is "communication with other gang affiliates", Defendant Drew, as a CDRC expert on gang status, is directed to briefly explain how a seemingly benign non-gang related newspaper such as the San Francisco Bay View Newspaper indicates ongoing gang involvement AND/OR how sharing of reading material by inmates in a SHU unit, most/all of whom are gang members, is indicia of on-going gang involvement.

///

**ROG 29:** "What about a manila envelope in the possession of Plaintiff that belongs to another prisoner is gang activity?"

Plaintiff contends that this request is relevant to his allegation that Defendant's decision was not supported by "some evidence."

**Ruling:** Granted: See Order for Interrogatory 28.

**ROG 30:** "What about Plaintiff's writing is considered Gang activity?"

Plaintiff contends this request is relevant to his First Amendment claim that Defendant took material intended for an art show and deemed it gang activity.

**Ruling:** Denied: The Court read the entire contents of the unmarked envelope, referred to in Defendant Drew's declaration in support of motion for summary judgement as Plaintiff's biography. It is arguably quite clearly evidence of gang affiliation/sympathy/activity. That Plaintiff claims it was written solely for "an art show" is argument to be left for trial, should this matter reach trial.

**ROG 31:** "What year did Plaintiff arrive at San Quentin State Prison?"

Plaintiff contends that this request is relevant to his allegation that the material relied upon by Defendant did not meet the "some evidence" standard, and is relevant to how current the events were that Plaintiff wrote about.

**Ruling:** Granted: Defendant is directed to look up Plaintiff's incarceration history and provide the year Plaintiff first arrived at San Quentin State Prison.

**ROG 32:** "Are Prisoners allowed to write fact or fiction to their outside supporters?"

Plaintiff contends that this request is relevant to his allegations that his writings were not supposed to be used against him because they did not evidence gang activity.

**Ruling:** Denied: The Court accepts Defendant's objection that the question, as framed, is vague and ambiguous.

**ROG 33:** "Was any of the material you relied upon banned at the time from entering the prison for security reasons?"

Plaintiff contends this request is relevant because Defendant took approved material and punished him for reading and writing about it.

7

1  **Ruling:** Granted in Part, Denied in Part:  With regard to the San Francisco Bay View
2  Newspapers, Defendant shall respond.  With regard to the Plaintiff's own penned
3  "biography"/diary/essay, clearly this/these were not banned at the time because, according to
4  Defendant's Drew's declaration referred to above, "Ellis retained possession of these documents and
5  still possesses them as far as I am aware."  (Decl. p. 6)

6  **ROG 34:** "What items?"

7  Plaintiff contends this request is relevant because the material relied upon by Defendant was
8  and is permissible in prison.

9  **Ruling:** Denied: The Court finds this truncated interrogatory to be vague and ambiguous.
10 Is Plaintiff asking what items are *typically* or *usually* or *by statute or code* appropriate for banning?
11 Or, is Plaintiff asking what items of those analyzed by Defendant Drew are/would be/should be
12 banned?  [Note: The Court is not inviting nor allowing Plaintiff to rephrase this Interrogatory to
13 serve it upon Defendant yet again.]

14  **B.    Motion to Compel the Production of Documents, Set One**

15  **POD 1:** "Any and all policy directives, which would include administrative bulletins,
16 mamrendums [sic] and rules, that relate to the Departments inactive gang procedures."

17  Plaintiff contends these documents are relevant to his due process, equal protection, and
18 retaliation claims arising from the classification of his legitimate, cultural material as gang related
19 because he is African American.

20  **Ruling:** Denied: Defendant's response was adequate.  There is no time frame set forth (when
21 he was first incarcerated, when he was at San Quentin, when he was in Pelican Bay, etc.);
22 nonetheless, the produced copies of CA Code of Regulations, Title 15, § 3378 (specifically §3378(d)
23 (e) ) and §3341.5 are adequate to establish guidelines for determining whether a prisoner is still
24 involved in gang activity or not.

25  **POD 2:** "Any and all grievances received by the Department from January 1, 1999 to January
26 31, 2001 specifically relating to defendant Drew's review of their inactive gang status."

27  Plaintiff contends these documents are relevant to his claim that Defendant was biased and
28 took legitimate, cultural reading material and deemed it gang related because it offended him.

Plaintiff also contends that a pattern of misconduct toward African American prisoners can be established from a review of these documents.

**Ruling:** Denied: Defendant's objections are sustained.

**POD 3:** "Any and all court decisions or consent decree's [sic] entered into pertaining to the inactive gang policy."

Plaintiff contends that this request is relevant to his allegation that there was no independent review of Defendant's recommendation, in contravention of due process, and that African American and other non-white prisoners are discriminated against in inactive reviews.  Plaintiff further contends that it is important to know what the policy actually is versus reliance upon vague allegations.

**Ruling:** Denied.  Defendant's objections are sustained.

**POD 4:** "A redacked [sic] copy of the confidential memo authorized by Defendant Drew on 1/24/00 and placed in plaintiff's c-file."

Plaintiff contends that the memo is relevant to his allegation that the information is false and has no basis in the law as evidence of gang activity, and is insufficient to support Defendant's decision.  Plaintiff contends that he is seeking a redacted copy and is not seeking information on confidential informants, as Defendant's determination did not include confidential informants.

**Ruling:** Granted: A redacted copy will be provided in conjunction with the ruling on Plaintiff's separate motion.  Note: The redacted portions have been determined by the Court to be unrelated to the inactive review and Defendant Drew's conclusions in that regard.

**POD 5:** "A copy of the building log that list what prisoners were housed at Pelican Bay State Prison in D-facility building Six (6) on 1/24/00."

Plaintiff contends that this document is relevant because it shows that Plaintiff was housed in the same building and section with the inmates Defendant refers to, and Plaintiff was not associating with inmates in other parts of the prison as Defendant tried to make it appear.  Plaintiff contends that Defendant did not conduct a thorough search in good faith because it is untrue that CDCR cannot determine who lived where at what time.  Plaintiff contends this information would be available if a crime were committed.

1  **Ruling:** Denied: While the Court agrees this information could be relevant and would be
2  discoverable, absent evidence to the contrary, Plaintiff is required to accept Defendant's response
3  that this document no longer exists. Plaintiff's assertion that Defendant did not search thoroughly
4  and that this information would be available if a crime had been committed is not evidence that the
5  document exists and Defendant's response is untruthful.

6  **POD 6:** "A list by race of all the prisoners Defendant Drew reviewed for inactive status from
7  January 1999 to January 31, 2001 including the percentage of those prisoners by race Defendant
8  Drew recommended for release."

9  Plaintiff argues this is relevant to his claim that African American prisoners are discriminated
10 against, and that it would not be hard for prison officials to compile a list because they compile lists
11 of prisoners up for inactive review. Plaintiff also contends that he is requesting a specific document,
12 as he was number 20 on the list.

13 **Ruling:** Plaintiff's motion is denied. Defendant is not required to create a document. It is
14 immaterial that he could do so or that it would be easy. Plaintiff is only entitled to obtain documents
15 that exist. Plaintiff has asked for a document that includes a racial breakdown. Defendant asserted
16 such a document does not exist. Plaintiff is required to accept that response.

17 **POD 7:** "A copy of any and all policies that establish who is charged with reviewing the
18 recommendations made by the L.E.I.U. investigators in the course of their inactive review."

19 Plaintiff contends that these documents are relevant to his allegation that there was no
20 independent review of Defendant's findings, and his decision was final. Plaintiff contends he is
21 seeking information on who reviews the L.E.I.U. investigator's decision and what policy establishes
22 it.

23 **Ruling:** Plaintiff's motion is denied. The Court cannot discern the relevance of this request.
24 Whether or not there was an independent review of Defendant's decision is not an element of the
25 claim. The issue is whether Defendant deprived Plaintiff due process, not whether the regulations
26 were constitutionally deficient. Independent review of the decision is not relevant to whether there
27 was "some evidence" to support the decision or whether Defendant provided Plaintiff with other
28 required process under federal law.

**C.     Motion to Compel the Production of Documents, Set Two**

**POD 1:** "A complete photograph of D-6 C Pod, which shows the inside of the pod, number of cells, the exercise yard etc. at Pelican Bay State Prison."

Plaintiff seeks a photograph because he wishes to demonstrate the close proximity in which inmates in the same pod are housed. Plaintiff asserts that because Defendant based his determination that Plaintiff was ineligible for inactive status on material Plaintiff possessed but which belonged to other inmates, Plaintiff wants to show that as a direct result of being housed closely together, inmates associate, share reading material, etc.

**Ruling:** This photograph is not relevant to Plaintiff's claim. In determining whether Plaintiff's due process rights were violated, the issue is whether the newspapers and written material constitute "some evidence" supporting Defendant's decision. Neither the Court nor the jury is to re-weigh the evidence or substitute its judgment for Defendant's and the issue is not whether there is an alternate or innocent explanation for why Plaintiff possessed other inmates' material. Rather, the inquiry is simply whether there is *any* support for Defendant's decision.

Note: Plaintiff may prepare his own not-to-scale drawings from his recollection of the D-6 C Pod as well as the exercise yard, showers, etc. and use them at trial to show relative proximities of cells, etc. He may exam and/or cross-examine Defendant and/or other defense witnesses as to what is depicted in Plaintiff's own diagrams.

**IV.     Motion for Permission to Communicate with Inmate Witnesses**

Plaintiff requests a court order mandating that he be permitted to obtain declarations from five inmate witnesses. Plaintiff contends he has unsuccessfully attempted to facilitate communication with his witnesses and the witnesses have relevant information. Plaintiff is willing to permit review of the correspondence to satisfy security concerns.

Plaintiff contends inmates Williamson and Coleman (1) were in a position to see Defendant search Plaintiff's cell and exit the cell with certain items, and (2) participated in some of the writings Defendant claimed to have found. Plaintiff contends that inmate Dewberry, who was Williamson's cellmate and in the same pod as Plaintiff (1) was in a position to see Defendant search Plaintiff's cell and exit the cell with certain items, and (2) can offer information on the extreme isolation of Pelican

11

Bay State Prison and why it is common practice for prisoners to write and share their experiences. Plaintiff contends that inmate Jackson, who was Plaintiff's cellmate, (1) was in a position to see what items Defendant exited the cell with, and (2) can offer further insight into the search which may be relevant. Finally, Plaintiff contends that inmate Alexander, who was housed in the same pod as Plaintiff and used to be his cellmate, (1) was in a position to see Defendant search Plaintiff's cell and exit the cell with certain items, (2) was the author of "Domestic Exile," the article which was attached to Plaintiff's article, and (3) can offer insight into why they attached their articles together and why they permitted other inmates to sign on to their articles.

The Court notes that the attached exhibits, Request For Correspondence Approval, places each of Plaintiff's proposed witnesses at Pelican Bay State Prison. Inasmuch as Plaintiff has just been transferred back to Pelican Bay, this motion may well be moot as he may communicate directly with fellow inmates unless, of course, such communication is forbidden due to institution safety and security concerns.

**V.       Motion for In Camera Review of Confidential Memorandum**

Plaintiff seeks an in camera review of the confidential memorandum authored by Defendant on January 24, 2000. Plaintiff alleges that Defendant authored the memorandum to hide his true intentions behind classifying the material as gang activity. Plaintiff contends that the memorandum does not contain information on confidential informants and if the report contains other inmates' names, he is entitled to production of those because they may be potential witnesses. Plaintiff requests that counsel to be appointed to represent him if Defendant's counsel is present at the proceeding.

On December 5, 2007, the memorandum was filed under seal by Defendant in support of his motion for summary judgment. Because the Court has the memorandum in its possession and can review it in conjunction with Plaintiff's request for its production, Plaintiff's motion for in camera review is granted. Plaintiff's request for counsel to be appointed if Defendant's counsel is present is denied, as neither Defendant nor his counsel is involved in the in camera review.

///

///

**VI.    Order**

1. Plaintiff's motion for an in camera review of the confidential memorandum, filed May 4, 2007, is GRANTED;

2. Plaintiff's motions to compel, filed April 18, 2007, and May 21, 2007, are GRANTED in part and DENIED in part;

3. Plaintiff's motion for permission to communicate with inmate witnesses is DENIED as moot in light of Plaintiff's transfer;

4. Defendant has **thirty (30) days** from the date of service of this order within which to serve responses on Plaintiff in compliance with this order; and

5. The Clerk's Office shall serve a copy of the redacted memorandum on the parties with this order.

IT IS SO ORDERED.

**Dated:    March 27, 2008**              /s/ Sandra M. Snyder
                                         UNITED STATES MAGISTRATE JUDGE